Filed 6/11/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
|    Plaintiff and Respondent, | G057502 |
|      v. | (Super. Ct. No. 99CF0831) |
| ELOY GONZALEZ, | O P I N I O N |
|    Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Cheri T. Pham, Judge.  Reversed and remanded.

Michelle May Peterson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Lynne G. McGinnis and A. Natasha Cortina, Deputy Attorneys General, for Plaintiff and Respondent.

Eloy Gonzalez appeals from the trial court's postjudgment order denying his petition for resentencing pursuant to Penal Code[1] section 1170.95. Gonzalez asserts the court improperly determined he was ineligible for resentencing as a matter of law. The Attorney General (AG) concedes section 1170.95 is constitutional but contends the court's denial was nevertheless proper. The AG asserts a person convicted of murder with a robbery-murder special circumstance before the Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*), and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), is barred from pursuing resentencing under section 1170.95 without first having obtained a writ of habeas corpus to set aside the special circumstance for insufficient evidence. We disagree. Because the record of conviction does not establish Gonzalez's ineligibility for resentencing as a matter of law, we reverse the postjudgment order denying the petition for resentencing and remand the matter with directions to issue an order to show cause (OSC) and to proceed in accordance with section 1170.95, subdivision (d).

FACTS

A detailed recitation of the facts is set forth in the prior opinion in this case. (*People v. Miller, et al.,* (Mar. 22, 2004, G029025) [nonpub. opn.] (*Miller*).) In sum, "Southside" gang members Gonzalez, Matthew Robert Miller, and Eduardo Vargas engaged in a series of armed robberies, one of which ended with Vargas shooting a robbery victim, Jesse Muro. Vargas was tried separately, convicted of first degree murder, and sentenced to death. (*Ibid*.)

An information charged Miller and Gonzalez with first degree murder of Muro, with a special circumstance allegation the murder was committed during the commission of a robbery pursuant to section 190.2, subdivision (a)(17)(A). (*Miller,*

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

2

*supra*, G029025.)  It also charged both with the following:  the robberies of Muro, Matthew Stukkie, and Simon Cruz; several other counts of robbery; felon in possession of a firearm (Gonzalez only); and street terrorism.  (*Ibid.*)  The information alleged Miller and Gonzalez were principals who vicariously discharged a firearm during the commission of a felony committed for the benefit of a street gang (§ 12022.53, subds. (d) & (e)(1)).  (*Ibid.*)  It also alleged the crimes were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)), and various personal and vicarious arming and gun use claims.  (*Ibid.*)

Miller and Gonzalez were tried together.  Ultimately, the jury convicted both on several counts of robbery and on one count of first degree murder.  (*Miller, supra*, G029025.)  "Gonzalez was convicted of first degree murder of Muro, the special circumstances allegation that the murder was committed during a robbery was found to be true, he was convicted on the Muro and Stukkie robbery counts, and all other robberies with which he was charged.  Allegations of vicariously discharging a firearm during the commission of a felony committed for the benefit of a street gang, committing crimes for the benefit of a street gang, personal and vicarious use of a firearm were found true.  Gonzalez received a sentence of life in prison without possibility of parole."  (*Ibid*.)

As we explained in *Miller,* "Miller and Gonzalez both raise[d] arguments concerning their convictions for the murder of Muro as non-shooters.  The prosecution offered two theories of culpability.  The primary theory was felony murder, i.e., that both defendants were perpetrators of a robbery, or involved in a conspiracy to commit a robbery, and Muro's murder took place during the commission of that robbery.  The second theory was that Miller and Gonzalez were aiders and abettors of the uncharged offenses of assault with a deadly weapon, assault, or disturbing the peace by fighting, and Muro's murder was the natural and probable consequence of one of those target offenses.  Gonzalez was convicted on the Muro and Stukkie robbery counts, and the special

3

circumstance of robbery was found true, so the jury obviously adopted the felony-murder theory as to him." (*Miller, supra*, G029025.) We affirmed the judgment. (*Ibid.*)

In 2019, Gonzalez filed a section 1170.95 petition to vacate his murder conviction and be resentenced. The prosecution filed opposition to the petition, mainly arguing S.B. 1437 was unconstitutional. It further asserted as follows: "[i]f this Court rules [S.B.] 1437 is constitutional and issues an [OSC], the People will present evidence at a hearing that [Gonzalez] is ineligible for resentencing relief under . . . section 1170.95," based on claims Gonzalez acted with implied malice and he was a major participant in the felony underlying the murder who acted with reckless indifference to human life. The prosecution later added a supplemental claim that the jury's robbery special circumstance finding under section 190.2, subdivision (a)(17), barred the petition.

Gonzalez's appointed counsel filed a reply to the opposition. Just over two weeks later, the trial court denied the petition without issuing an OSC, permitting further evidence, or hearing argument. The court first determined S.B. 1437 was unconstitutional and then found sufficient evidence Gonzalez acted with implied malice and he was a major participant who acted with reckless indifference to human life.

The trial court explained the following: "In this case, it is clear that [Gonzalez] knew Vargas had a gun. Both [Gonzalez] and Vargas, along with Miller, were, members of the Southside gang. [Gonzalez] had accompanied Vargas and Miller two days prior to the murder on a series [of] armed robberies. [Gonzalez] witnessed Vargas rob victim Cruz at gunpoint on the night of the murder, and knew that Vargas was 'amped up' afterwards. Yet, [Gonzalez] intentionally egged Vargas on when victims Stukkie and Muro walked by asking Vargas if the victims were from a rival gang whose members had beaten up [Gonzalez] a few days earlier. As fellow gang members, [Gonzalez] knew this would provoke Vargas to want to retaliate against the victims, and Vargas did just that. Upon hearing the suggestion that the victims were from Highland

4

Street, Vargas immediately ran across the street towards the victims, grabbed one of them by the neck (presumably victim Muro) and held a gun to the victim's head. Then, instead of staying put, [Gonzalez] intentionally crossed the street to Vargas' location 'to back' him up. Contrary to [Gonzalez's] assertions that he 'was never placed on notice' that Vargas could kill the victim, in intentionally inciting Vargas to retaliate for the beating that [Gonzalez] suffered at the hands of rival gang members, knowing full well that Vargas had a gun and was 'amped up' from the prior robbery. [Gonzalez] knew there was a risk of death. [Gonzalez] committed an intentional act the natural and probable consequence of which was dangerous to human life, which [Gonzalez] knew was dangerous to human life, and [Gonzalez] deliberately acted with conscious disregard for human life. As such, [Gonzalez] acted with implied malice and is therefore statutorily ineligible for resentencing under [section] 1170.95."

It further opined Gonzalez's actions after Vargas used lethal force, running back to the car to find Vargas and taking Stukkie's bracelet, demonstrated he was a major participant in the crimes. It continued, "As a member of the Southside gang, [Gonzalez] had knowledge of guns and knowledge that his fellow gang members had and used guns. Furthermore, there was evidence that [Gonzalez] had participated in the robberies on March 30 where Miller and/or Vargas had a gun and had threatened to shoot or kill the victims with a gun. On April 1, immediately prior to the murder, [Gonzalez] witnessed Vargas use a gun to rob victim Cruz. [¶] . . . [¶] [Gonzalez] was present at the scene of the murder and had the opportunity to stop the killing or aid the victim, but he did neither. Instead, it was [Gonzalez] who instigated the contact with victims Stukkie and Muro by pointing them out to Vargas as possible members of the Highland Street gang, whose members had previously beaten up [Gonzalez]. [¶] . . . [¶] [Gonzalez] was aware Vargas had a gun and had used it to threaten victims in prior robberies, including the one of victim Cruz immediately prior to the murder. [Gonzalez] was also aware Vargas was

5

'amped up' from the robber[y] of victim Cruz. Therefore, when [Gonzalez] identified victims Stukkie and Muro to Vargas as possible members of the Highland Street [gang] whose members had previously assaulted [Gonzalez], [Gonzalez] knew he was provoking Vargas to want to retaliate by hurting, and possibly shooting the victims. [¶] . . . [¶] [Gonzalez] made NO efforts to minimize the possibility of violence during the crime. [¶] Thus, [Gonzalez] was a major participant who acted with reckless indifference to human life."

DISCUSSION

I. *S.B. 1437 and Section 1170.95*

S.B. 1437, "amended sections 188 and 189 and added section 1170.95 to the Penal Code, significantly modifying the law relating to accomplice liability for murder." (*People v. Lopez* (2019) 38 Cal.App.5th 1087, 1098-1099, review granted Nov. 13, 2019, S258175 (*Lopez*); Cal. Rules of Court, rule 8.1115(e)(1) [while review pending may rely on for persuasive value].) Section 1170.95, subdivision (a), provides, in relevant part, "A person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts . . . ."

The Legislature enacted S.B. 1437 to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (§§ 188, 189, as amended by Stats. 2018, ch. 1015, § 1, subd. (f).)

Under section 1170.95, if the petitioner makes a prima facie showing, the court must issue an OSC and, absent a waiver and stipulation by the parties, hold a

hearing to determine whether to vacate the murder conviction, recall the sentence, and resentence the petitioner. (§ 1170.95, subds. (c) & (d)(1).) A prima facie showing under section 1170.95 requires the following: (1) an accusatory pleading was filed against the petitioner allowing the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; (2) he or she was convicted of first or second degree murder following a trial, or accepted a plea offer to first or second degree murder in lieu of trial, at which he or she could have been so convicted; and (3) he or she could not be convicted of murder due to the amendments to sections 188 and 189. (§ 1170.95, subd. (a)(1)-(3).)

II. *Challenge to the Special Circumstance Finding As a Matter of Law*

The sole issue raised by the AG on appeal, one which the trial court did not address, is Gonzalez is ineligible for relief as a matter of law because his murder conviction included a robbery special circumstance under section 190.2, subdivision (d). The AG asserts, "[u]nless and until [Gonzalez] invalidate[d] the special circumstance on habeas, he is not entitled to resentencing under section 1170.95 as a matter of law." We disagree with the AG. Based on the record at this prima facie stage of review, we cannot say Gonzalez is ineligible for resentencing as a matter of law. Accordingly, we reverse and remand the postjudgment order for the trial court to issue an OSC as required by section 1170.95, subdivision (c).

"Section 189, subdivision (e), which permits a felony-murder conviction only when specified facts relating to the defendant's individual culpability have been proved, incorporates in subdivision (e)(3) the same requirements for proving the defendant acted with reckless indifference to human life as a major participant in one of the identified serious felonies as necessary for a felony-murder special-circumstance finding under section 190.2, subdivision (d). The factors properly considered in assessing such a felony-murder special-circumstance finding were clarified in *Banks . . .*

7

and *Clark . . .* , nearly two decades after [Gonzalez's] conviction. [Citations.]" (*People v. Harris* (2021) 60 Cal.App.5th 939, 954 fn. omitted (*Harris*).)

"To be sure, section 189, subdivision (e)(3), as amended by Senate Bill 1437, is now 'the same as the standard for finding a special circumstance under section 190.2[, subdivision] (d) as the former provision expressly incorporates the latter.' [Citations.] But '[w]hat permits a defendant convicted of felony murder to challenge his or her murder conviction based on the contention that he or she was not a major participant in the underlying felony who acted with reckless indifference to human life, are the changes Senate Bill 1437 made to sections 188 and 189, and in particular the addition of section 189, subdivision (e)(3), not the rulings in *Banks* and *Clark*.' [Citation.]" (*Harris*, *supra*, 60 Cal.App.5th at p. 957.)

In *Banks*, the Supreme Court identified the factors courts should consider in determining whether a defendant was a "major participant" under section 190.2, subdivision (d): "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Banks*, *supra*, 61 Cal.4th at p. 803, fn. omitted.)

The *Clark* court outlined considerations relevant to determining whether a defendant had acted with reckless indifference to human life, such as: was the defendant aware that guns would be used; did the defendant himself or herself use a gun; did the defendant have an opportunity to reduce the overall risk of violence during the felony or to aid the victim; and did the defendant know his or her cohorts were likely to use lethal

8

force?  (*Clark*, *supra*, 63 Cal.4th at pp. 618-622.)  *Banks* and *Clark* both instruct to determine whether the defendant acted with reckless indifference, courts must "look to whether a defendant has "'knowingly engag[ed] in criminal activities known to carry a grave risk of death."'  [Citations.]"  (*Banks*, *supra*, 61 Cal.4th at p. 801.)

Here, the felony-murder special circumstance allegations required the jury to find Gonzalez acted with reckless indifference to human life and as a major participant in the robbery that resulted in Muro's death (§ 190.2, subd. (a)(17)).  The AG asserts the jury's true finding on the robbery special circumstance precludes relief under section 1170.95 as a matter of law.  The AG contends the only mechanism for Gonzalez to test the evidentiary support for the robbery special circumstance finding based on *Banks* and *Clark* was by petition for writ of habeas corpus.  We recognize there is a split of authority on this issue, and the AG's position has been upheld by several recent appellate decisions.  (*People v. Murillo* (2020) 54 Cal.App.5th 160, 168, review granted Nov. 18, 2020, S264978 (*Murillo*); *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1142-1143, review granted Oct. 14, 2020, S264284 (*Galvan*); *People v. Gomez* (2020) 52 Cal.App.5th 1, 17, review granted Oct. 14, 2020, S264033 (*Gomez*).)  The Supreme Court has not yet weighed in on this issue.  We join several of our sister courts who have rejected the argument advanced by the AG "as contrary to the language and intent of section 1170.95."  (*Harris*, *supra*, 60 Cal.App.5th at p. 956; *People v. York* (2020) 54 Cal.App.5th 250, 260-261, review granted Nov. 18, 2020, S264954 (*York*); *People v. Smith* (2020) 49 Cal.App.5th 85, 93-94, review granted July 22, 2020, S262835 (*Smith*); *People v. Torres* (2020) 46 Cal.App.5th 1168, 1178-1179, review granted June 24, 2020, S262011 (*Torres*).)

The *Galvan* court affirmed the trial court's determination that "[b]y finding a [pre-*Banks* and *Clark*] special circumstance allegation true, the jury makes precisely the same finding it must make in order to convict a defendant of felony murder under the

9

new law. Because a defendant with a felony-murder special circumstance could still be convicted of murder, he is ineligible as a matter of law to have his murder conviction vacated. . . . If [a defendant] is entitled to relief based on *Banks* and *Clark*, the avenue for such relief is not section 1170.95, but a petition for writ of habeas corpus." (*Galvan*, *supra*, 52 Cal.App.5th at pp. 1141-1142.) We respectfully disagree with the *Gomez, Galvan,* and *Murillo* line of cases. Instead, we join with the decisions in *Harris*, *Torres*, *Smith,* and *York*.

The *Gomez*, *Galvan*, and *Murillo* line of cases misperceive the nature of the section 1170.95 petition, which challenges the murder conviction, not the special circumstance finding. (*York*, *supra*, 54 Cal.App.5th at p. 260 ["section 1170.95 permits a petitioner to challenge a *murder conviction*" and if successful, "then under section 1170.95, subdivision (d)(3), the special circumstance is vacated as a collateral consequence"].) We adopt the *York* court's holding: "[W]e do not agree that section 1170.95 requires a defendant to challenge a pre-*Banks* and *Clark* special circumstance finding in a habeas corpus proceeding before he or she may successfully challenge the underlying murder conviction in a section 1170.95 proceeding. The statute does not state that a true finding on a special circumstance allegation automatically precludes relief. To the contrary, its language implies that there is no such bar to eligibility. Section 1170.95, subdivision (d)(2), provides: 'If there was a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony, the court shall vacate the petitioner's conviction and resentence the petitioner.' We find it significant that the Legislature made no provision for the consequence of a prior finding by a court or a jury that a petitioner *was* a major participant and *did* act with reckless indifference to human life. If the Legislature had intended such a finding automatically to preclude eligibility for relief, it could have said

10

so. We will not read a preclusive provision into the statute absent any indication that the Legislature intended one." (*Id.* at pp. 260-261, fn. omitted.)

Here, Gonzalez's petition is made possible by changes to section 189, not because of the clarifications made in *Banks* and *Clark*. (See § 1170.95, subd. (a)(3) [allowing petition if "[t]he petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019"].) Accordingly, Gonzalez properly challenged the underlying murder conviction pursuant to section 1170.95. Furthermore, as discussed below, any evidence supporting the robbery special circumstance finding has never been reviewed under the *Banks* and *Clark* standards. Because the trial court may not engage in factfinding at this early stage, any analysis under *Banks* and *Clark* was improper without first conducting an evidentiary hearing pursuant to section 1170.95, subdivision (d).

III. *Trial Court's Factfinding*

The AG argues Gonzalez was ineligible for resentencing based upon the jury's true finding on the robbery special circumstance, which we reject, but the trial denied the petition on other grounds after citing to evidence in the record and engaging in factfinding. The court summarily denied the petition after determining the facts of the case, taken from our prior opinion, demonstrated Gonzalez was a major participant who acted with reckless disregard for human life. However, some of the facts, made particularly significant by the Supreme Court's decisions in *Banks* and *Clark*, were disputed at trial and not clearly resolved by the jury's findings. This was also error.

The "authority to make determinations without conducting an evidentiary hearing pursuant to section 1170.95, [subdivision] (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)."

11

(*People v. Drayton* (2020) 47 Cal.App.5th 965, 980.) "If, accepting the facts asserted in the petition as true, the petitioner would be entitled to relief because he or she has met the requirements of section 1170.95[, subdivision] (a), then the trial court should issue an order to show cause. [Citation.]" (*Id.* at pp. 980-981.)

Here, it is clear the trial court engaged in factfinding, improper at the prima facie stage of review, to determine whether the evidence supported Gonzalez's conviction on the robbery special circumstance in light of the post-*Banks* and *Clark* standards. The court cited to evidence in the record including our opinion on direct appeal. After a lengthy analysis of the facts under the post-*Banks* and *Clark* standards, it then determined sufficient evidence supported a finding Gonzalez acted with implied malice, and he "was a major participant who acted with reckless indifference to human life."

Tellingly, the AG concedes, "the superior court did not follow the proper procedures in that it appeared to find the prima facie stages met but skipped the OSC and hearing before weighing the evidence and deciding that [Gonzalez] was not entitled to resentencing . . . ." We agree the court misunderstood its statutory duties. Factfinding following an evidentiary hearing is necessary to determine whether Gonzalez could be convicted of felony murder under the current version of section 189, subdivision (e). Accordingly, the trial court, after determining Gonzalez made a prima facie showing of eligibility, was required to issue an OSC and hold a hearing pursuant to section 1170.95, subdivisions (c) and (d).

IV. *Preclusion*

Finally, Gonzalez asserts his petition is not precluded under the theories of res judicata, collateral estoppel, or law of the case. We agree.

"The claim preclusion doctrine, formerly called res judicata, 'prohibits a second suit between the same parties on the same cause of action.' [Citation.] 'Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the

12

same parties (3) after a final judgment on the merits in the first suit.' [Citation.]" (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 91.) Furthermore, when the law authorizes a particular postjudgment remedy, like section 1170.95, claim preclusion does not apply to invocation of that remedy. (See *McCready v. Whorf* (2015) 235 Cal.App.4th 478, 482.)

There is no claim preclusion here because Gonzalez did not challenge the prosecution's cause of action on the special circumstance. Gonzalez seeks relief from the conviction, which is not the same cause of action as the special circumstance. The petition addresses only the first degree murder conviction, as expressly provided by section 1170.95.

As for issue preclusion or collateral estoppel, it "precludes relitigation of issues argued and decided in prior proceedings. [Citation.] Traditionally, we have applied the doctrine only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. [Citations.]" (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341, fn. ommitted.)

Here, defense counsel did not "actually litigate" the robbery special circumstance. Instead, he argued Gonzalez was not guilty of murder at all. Because Gonzalez made no effort to litigate the special circumstance, and had no reason to do so, the "actually litigated" element of collateral estoppel is not satisfied by the jury's true finding. Therefore, the jury's prior special circumstance finding has no preclusive effect on a current section 1170.95 proceeding.

13

Furthermore, section 1170.95, subdivision (d)(2), expressly provides, "'[i]f there was a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony, the court shall vacate the petitioner's conviction and resentence the petitioner.'" It omits any reference to a felony-murder special circumstance true finding being "an automatic statutory bar" to resentencing eligibility. (*Smith*, *supra*, 49 Cal.App.5th at p. 94.) "[T]he potential remedies outlined in section 1170.95 indicate that the Legislature anticipated some special circumstance findings would not preclude eligibility as a matter of law, and that those findings would be inconsistent with vacatur of the corresponding murder conviction. Section 1170.95, subdivision (d)(3) provides, 'If the prosecution fails to sustain its burden of proof, the prior conviction, and *any allegations* and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges.' . . . The statute is clearly designed to resolve the question of whether a murder conviction—not a special circumstance—is sufficiently supported. If the conviction cannot stand, the special circumstance will necessarily be vacated as well." (*Ibid*.)

Other resentencing provisions categorically disqualify certain classes of people for eligibility for relief. (See e.g., §§ 1170, subd. (d)(2)(A)(ii) [disqualifying inmates sentenced to life without parole for offense involving torture or when victim was law enforcement or other public safety officer]; 1170.02 [disqualifying from eligibility for compassionate release under § 1170, subd. (e), inmates convicted of first degree murder of a peace officer]; 1170.126, subds. (c), (e)(2) & (e)(3) [disqualifying from Proposition 36 relief second-strike inmates, and inmates who suffered prior convictions for specified offenses]; 1170.18, subd. (i) [disqualifying from Proposition 47 relief anyone with prior conviction of specified offenses].) Because section 1170.95 is devoid of any language disqualifying defendants facing a felony-murder special circumstance

14

finding, collateral estoppel cannot operate as a categorical preclusion bar to a section 1170.95 petition.

Finally, the law of the case principle is also inapplicable. "Where an appellate court states in its opinion a principle of law necessary to the decision, that principle becomes law of the case and must be adhered to in all subsequent proceedings . . . under the doctrine of the law of the case, the case may *not* go over ground that has been covered before in an appellate court." (*Sargon Enterprises, Inc. v. University of Southern California* (2013) 215 Cal.App.4th 1495, 1506.) This doctrine, however, "does not extend to points of law which might have been but were not presented and determined on a prior appeal. [Citation.]" (*Leider v. Lewis* (2017) 2 Cal.5th 1121, 1127.) Our prior opinion did not address the issues of whether Gonzalez was a major participant in the felony or acted with reckless indifference to human life. Accordingly, the law of the case is inapplicable to the jury's prior special circumstance finding.

## DISPOSITION

The postjudgment order denying Gonzalez's section 1170.95 petition is reversed, and the matter remanded with directions to issue an OSC and to proceed consistently with section 1170.95, subdivision (d).

O'LEARY, P.J.

WE CONCUR:

BEDSWORTH, J.

GOETHALS, J.

15