Filed 11/30/22  P. v. Polk CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E077815/E078782 |
| v. | (Super. Ct. No.  FWV012744) |
| KENNETH BERNARD POLK, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Kyle S. Brodie, Judge.  Affirmed.

Kimberly J. Grove, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland , Assistant Attorney General, Charles Ragland, Steve Oetting and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

# I.

## INTRODUCTION

In 1997, during a struggle at a used car dealership, defendant and appellant Kenneth Bernard Polk shot one of the owners. Defendant was convicted of second degree murder (Pen. Code,[1] §§ 187, subd. (a), 189; count 1) and grand theft (§ 487; count 2). The jury also found true that defendant used a firearm during the commission of the murder and the grand theft (§ 12022.5, subd. (a)).

Subsequently, defendant filed three petitions for resentencing pursuant to former section 1170.95.[2] The trial court denied those petitions, the second and third petitions based on law of the case. In this consolidated appeal, case Nos. E077815 and E078782, defendant argues that the trial court erred in finding this court's ruling in his prior appeal established his ineligibility for resentencing under former section 1170.95 based upon principles of law of the case. Although the court erred in denying the petitions based on principles of law of the case, we affirm the orders denying defendant's petitions for resentencing because the record of conviction establishes defendant's ineligibility for relief as a matter of law.

---

[1] All future statutory references are to the Penal Code unless otherwise stated.

[2] That section has since been renumbered as section 1172.6. (Stats. 2022, ch. 58, § 10.) However, because that change was nonsubstantive and the parties cite to section 1170.95, we will cite to section 1170.95 for ease of reference.

II.

FACTUAL AND PROCEDURAL BACKGROUND[3]

A. *Factual Background*

Two brothers, Rolando Lerma and Ruben Lerma, owned an Ontario used-car lot. On the afternoon of May 12, 1997, the three defendants, all African-American, visited the lot. They were driven there by Michael Harris, a cousin of defendants Maurice Reaves and Tennaine Donte Tuggle, and accompanied by codefendant, Patrick Earl James.

Defendant Reaves took a 1979 Cadillac for a test drive. When Reaves returned, Tuggle grabbed Rolando and threatened him with a gun. Tuggle then tossed the gun to one of the other two and defendant and Reaves went into the office where Ruben was. As Tuggle struggled with Rolando for his wallet, Rolando could hear an altercation and two gunshots from the office. Rolando's wrist was broken. Meanwhile, in the office, Ruben was shot and killed. Rolando saw a bloodied defendant leaving the lot. Defendant fired two shots at Rolando.

---

[3] The factual background is taken from this court's nonpublished opinion in defendant's prior direct appeal, case No. E022906, which is part of the record on appeal in this case. (*People v. Polk* (June 29, 2000, E022906) [nonpub. opn.] (*Polk I*).) (See *People v. Lewis* (2021) 11 Cal.5th 952, 972 (*Lewis*) [appellate opinion generally part of record of conviction as applied to section 1170.95 proceedings].) We rely on the record of his prior appeal for necessary procedural facts. (§ 1170.95, subd. (d)(3).)

Rolando found his brother dying in the office. Rolando discovered that Ruben's loaded .357 handgun was missing. The police recovered a fragmented bullet from the scene. The sheriff's crime lab identified it as having been fired from either a .357 or a .38 caliber gun.

In his defense, defendant testified that he and his codefendants went to the car lot to buy a car. Defendant alone went into the office to try to calm Ruben. Ruben took a gun from a desk and started hitting defendant on the head. Ruben dropped the gun, left the office, and returned with a shotgun. Defendant picked up the handgun and knocked the shotgun out of Ruben's hand. In a struggle over the handgun, the weapon fired and hit Ruben. Defendant claimed that he did not shoot at Rolando. As his principal defense, defendant maintained that Ruben was the initial aggressor and that he acted in self-defense when Ruben attacked him.

B. *Procedural Background*

On July 2, 1997, an information was filed charging defendant and his codefendants with first degree murder (§ 187, subd. (a); count 1), robbery (§ 211; count 2), attempted robbery (§§ 664/211; count 3), and assault with a firearm (§ 245, subd. (a); count 4). The information also alleged that defendant personally used a firearm during the commission of the murder, the robbery, and the attempted robbery (§ 12022.5, subd. (a)).

4

On March 13, 1998, as to count 1, a jury found defendant not guilty of first degree murder, but guilty of second degree murder with the personal use of a firearm. As to count 2, the jury found defendant guilty of the lesser included offense of grand theft in violation section 489, and also found true the personal weapon use enhancement allegation attached to that count. The jury found defendant not guilty on counts 3 and 4. The trial court found true the allegations that defendant had suffered one prior strike conviction (§§ 667, subds.(b)-(i)) and had served one prior prison term (667.5, subd. (b)). Defendant was sentenced to a total indeterminate term of 41 years to life in state prison.

Defendants subsequently appealed. On June 29, 2000, in a nonpublished opinion, we affirmed the judgment and remanded the matter to allow the trial court to correct the sentence and the abstract of judgment. (*Polk I*, *supra*, E028623.) Following remand, the trial court sentenced defendant to a term of 51 years to life. (*People v. Polk* (Nov. 28, 2001, E028623) [nonpub. opn.] (*Polk II*).) Following a second appeal, on November 28, 2001, in a nonpublished opinion, we again affirmed the judgment but specified that defendant's sentence should be 30 years to life plus 11 years. (*Polk II*, *supra*, E028623.)

On January 1, 2019, Senate Bill No. 1437 became effective (2017-2018 Reg. Sess.), which amended the felony murder rule and the natural and probable consequences doctrine as it relates to murder. (See Stats. 2018, ch. 1015, § 1, subd. (f), eff. Jan. 1, 2019.) Senate Bill No. 1437 also added former section 1170.95, which allows those "convicted of felony murder or murder under a natural and probable consequences theory . . . [to] file a petition with the court that sentenced the petitioner to have the

petitioner's murder conviction vacated and to be resentenced on any remaining counts . . . ." (Former § 1170.95, subd. (a).)

On January 7, 2019, defendant in pro. per. filed a petition for resentencing pursuant to former section 1170.95. Defendant subsequently obtained counsel who had represented him in the underlying trial.

On March 12, 2019, the People filed a motion to strike the petition on the basis Senate Bill No. 1437 was unconstitutional. The People also filed an informal opposition to defendant's petition, arguing defendant was not eligible for relief as a matter of law pursuant to former section 1170.95 because defendant's record of conviction established he was the actual killer.

On May 31, 2019, the trial court granted the People's motion to strike defendant's petition, finding former section 1170.95 unconstitutional. Defendant appealed, and on November 22, 2019, in a nonpublished opinion, we assumed without deciding that former section 1170.95 was constitutional, and affirmed the denial of the petition. (*People v. Polk* (Nov. 22, 2019, E072944) [nonpub. opn.] (*Polk III*). We explained that defendant's "record of conviction shows that he was the actual killer" and therefore he could not make a prima facie case for relief. (*Polk III*, *supra*, E072944.)

On July 29, 2021, defendant filed a second former section 1170.95 petition seeking resentencing. In a minute order, dated August 23, 2021, the same court that denied the first petition summarily denied the second petition. The court's minute order explains its reasoning as follows: "The Court has received a 'Second Petition for

Resentencing' based on Penal Code [former] [s]ection 1170.95. [¶] The Court of Appeal has already determined that Petitioner is not eligible for relief under that statute (See Exhibit B, at page 7.) [¶] That holding is binding on this Court as the law of the case. (See *People v. Scott* (1976) 16 Cal.3d 242, 246-247.) [¶] The Petition is therefore, Denied."

On February 3, 2022, defendant filed a third former section 1170.95 petition seeking resentencing. By minute order dated February 16, 2022, the same court summarily denied the petition, noting as follows: "The Court is in receipt of a third Petition for Resentencing Pursuant to Penal Code [former] [s]ection 1170.95. [¶] This Petition is denied on the same grounds his second Petition for Resentencing Pursuant to Penal Code [former] [s]ection 1170.95 was denied on 08/23/2021." Defendant timely appealed from the denial of both petitions for resentencing.

## III.

## DISCUSSION

Defendant contends the trial court erred "in finding, based upon principles of law of the case, that this court's ruling in the previous appeal established [his] ineligibility for resentencing under [former] section 1170.95." He also argues the court erred in summarily denying his petitions for resentencing without issuing an order to show cause and conducting an evidentiary hearing.

A. *General Background of Former Section 1170.95*

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 to "'amend[] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'" (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*); see Stats. 2018, ch. 1015, § 1, subd. (f).) The criminal liability of direct aiders and abettors did not change under Senate Bill No. 1437. (*People v. Offley* (2020) 48 Cal.App.5th 588, 595-596.) Senate Bill No. 775 expanded the scope of those changes to encompass, among other things, murder convictions "under the natural and probable consequences doctrine *or other theory under which malice is imputed to a person based solely on that person's participation in a crime*." (§ 1170.95, subd. (a), as amended by Stats. 2021, ch. 551, § 2, italics added.)

Senate Bill No. 1437 eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and significantly limited the scope of the felony-murder rule. (*Lewis*, *supra*, 11 Cal.5th at p. 957; *Gentile*, *supra*, 10 Cal.5th at pp. 842-843, 847-848.) Senate Bill No. 1437 amended the felony-murder rule by adding section 189, subdivision (e). (Stats. 2018, ch. 1015, § 3.) It provides that a participant in the qualifying felony is liable for felony murder only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless

indifference to human life. (§ 189, subds. (e), (f).) The Legislature also amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188, which states that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3), added by Stats. 2018, ch. 1015, § 2.) "Senate Bill No. 1437 changed the circumstances under which a person could be convicted of murder without a showing of malice, but it did not exclude from liability persons convicted of murder for acting with implied malice." (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1057 (*Soto*), abrogated on another ground by *Lewis*, *supra*, 11 Cal.5th at p. 967.)

Senate Bill No. 1437 also "added [former] section 1170.95 to provide a procedure for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief." (*Gentile*, *supra*, 10 Cal.5th at p. 843; see *Lewis*, *supra*, 11 Cal.5th at p. 959.) Pursuant to former section 1170.95, an offender must file a petition in the sentencing court declaring that: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine . . . [;] [¶] (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder [;] [¶] [and] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to [s]ection

9

188 or 189 made effective January 1, 2019." (§ 1170.95, subds. (a)(1)-(3); see § 1170.95 subd. (b)(1)(A).)

The trial court then determines whether the petition is facially sufficient under former section 1170.95, subdivision (b). (*Lewis*, *supra*, 11 Cal.5th at p. 960.) If the petition contains all the required information, including a declaration by the petitioner that he or she was convicted of murder and could not now be convicted of murder because of changes to section 188 or 189 (§ 1170.95, subd. (b)(1)(A)), the court then must appoint counsel to represent the petitioner upon his or her request pursuant to former section 1170.95, subdivision (c). (*Lewis*, *supra*, at pp. 957, 959-960, 966.) Further, upon the filing of a facially sufficient petition, the court must direct the prosecutor to file a response to the petition and permit the petitioner to file a reply, and the court must determine whether the petitioner has made a prima facie showing that he or she is entitled to relief. (See former § 1170.95, subd. (c); *Lewis*, *supra*, at pp. 964, 966.)

In determining whether the petitioner has made a prima facie showing, "'"the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause."'" [Citations.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.]" (*Lewis*, *supra*, 11 Cal.5th at p. 971.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial

10

court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Id*. at p. 972.) "[T]he trial court should not decide unresolved factual issues that involve credibility determinations or weighing of evidence. Rather, it should decide such issues only after issuing an order to show cause and holding an evidentiary hearing." (*People v. Duchine* (2021) 60 Cal.App.5th 798, 811-812.)

"Nevertheless, the court may appropriately deny a petition at the prima facie stage if the petitioner is ineligible for relief *as a matter of law*." (*People v. Harden* (2022) 76 Cal.App.5th 262, 270 (*Harden*).) "'[I]f the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner,"'" thereby deeming him or her ineligible. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) For example, if the record shows that the jury was not instructed on either the natural and probable consequences or felony-murder doctrines, then the petitioner is ineligible for relief as a matter of law. [Citation.] A finding of ineligibility at the prima facie stage may also be based on a legal holding from a prior appellate opinion arising from the conviction. [Citation.]" (*Harden*, *supra*, at p. 270, citing *People v. Daniel* (2020) 57 Cal.App.5th 666, 677; *Lewis*, *supra*, at p. 972.)

"Appellate opinions . . . are generally considered to be part of the record of conviction." (*Lewis*, *supra*, 11 Cal.5th at p. 972.) "[T]here is no categorical bar to consulting the record of conviction at the prima facie stage." (*Id*. at p. 972, fn. 6.) "In sum, the parties can, and should, use the record of conviction to aid the trial court in

11

reliably assessing whether a petitioner has made a prima facie case for relief under [former section 1170.95,] subdivision (c)." (*Id*. at p. 972.) Furthermore, the court may rely on jury instructions, which are part of the record of conviction, to make the prima facie determination because the instructions "given at a petitioner's trial may provide 'readily ascertainable facts from the record' that refute the petitioner's showing, and reliance on them to make the eligibility or entitlement determinations may not amount to 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Soto*, *supra*, 51 Cal.App.5th at p. 1055.)

If the petitioner makes a prima facie showing under former section 1170.95, subdivision (c), the court must issue an order to show cause and hold a hearing "to determine whether to vacate the murder . . . conviction and to recall the sentence and resentence the petitioner on any remaining counts." (Former § 1170.95, subd. (d)(1).) If a hearing is held, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to [s]ection 188 or 189 made effective January 1, 2019." (Former § 1170.95, subd. (d)(3).) The prosecutor and the petitioner may offer new or additional evidence to meet their respective burdens at the hearing stage. The admission of evidence at the hearing is governed by the Evidence Code. However, the court also "may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed," as well as the "procedural history of the case recited in any

12

prior appellate opinion." (Former § 1170.95, subd. (d)(3).) Hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of section 872 is inadmissible at the evidentiary hearing, unless made admissible by another exception to the hearsay rule. (Former § 1170.95, subd. (d)(3).)

The prima facie determination under former section 1170.95 is a question of law, and the court may deny a petition at the prima facie stage if the petitioner is ineligible for resentencing as a matter of law. (*Lewis*, *supra*, 11 Cal.5th at p. 966.) "We independently review a trial court's determination on whether a petitioner has made a prima facie showing. [Citation.]" (*Harden*, *supra*, 76 Cal.App.5th at p. 270.)

B. *Law of the Case*

Defendant argues that the doctrine of the law of the case does not apply because controlling law has been changed or clarified between the first and second appellate decisions and the question of whether he had made a prima facie showing under former section 1170.95, subdivisions (a) and (c) was not properly presented or determined at the time he filed his first petition for resentencing.

"Where an appellate court states in its opinion a principle of law necessary to the decision, that principle becomes law of the case and must be adhered to in all subsequent proceedings . . . under the doctrine of the law of the case, the case may *not* go over ground that has been covered before in an appellate court." (*Sargon Enterprises, Inc. v. University of Southern California* (2013) 215 Cal.App.4th 1495, 1506; accord, *People v. Alexander* (2010) 49 Cal.4th 846, 870.) Where "'there is a substantial difference in the

13

evidence to which the [announced] principle of law is applied, . . . the [doctrine] may not be invoked.'" (*People v. Barragan* (2004) 32 Cal.4th 236, 246.)  This doctrine also "does not extend to points of law which might have been but were not presented and determined in the prior appeal.  [Citation.]" (*Leider v. Lewis* (2017) 2 Cal.5th 1121, 1127.)

Our prior opinion did not address in detail the issue of whether defendant was the actual killer in the context of intervening law clarifying the procedural requirements for petitions for resentencing under former section 1170.95.  Accordingly, we find the law of the case doctrine is inapplicable in this case.  We therefore focus on whether other portions of the record of conviction—specifically, jury instructions given and the verdicts returned based on them—conclusively establish the jury convicted defendant of second degree murder based on a finding that he was the actual killer.

C.  *Whether Defendant Can Establish a Prima Facie Case for Relief*

The jury instructions given at defendant's trial show, first, that the only theory of first degree murder was felony murder.  Defendant, however, was not convicted of first degree felony murder but second degree murder.  The jury was *not* instructed on second degree felony murder under CALJIC No. 3.32.  Instead, the jury was instructed with the second degree murder instruction pursuant to CALJIC No. 8.30, which specifically stated:  "Murder of the second degree is the unlawful killing of a human being *with malice aforethought* when the perpetrator intended unlawfully to kill a human being but the evidence is insufficient to prove deliberation and premeditation."  The jury was also

14

instructed with amended CALJIC No. 8.30 as follows: "Murder of the second degree is the unlawful killing of a human being with malice aforethought when the perpetrator intended unlawfully to kill a human being." With respect to second degree murder, the jury was further instructed pursuant to CALJIC No. 8.31 that to find defendant guilty of that offense, the jury had to find that: "The killing resulted from an intentional act, [¶] 2. The natural consequences of the act are dangerous to human life, and [¶] 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life. [¶]." Given the elements of this instruction, a conviction under this theory required a finding of express or implied malice. Since a personal finding of malice was required, defendant was not convicted of a theory of murder where malice was imputed.

As for aiding and abetting and the natural and probable consequences doctrine, the jury was only instructed that it could use that theory to convict on attempted robbery (count 3) and assault with force likely to produce great bodily injury (count 4). There was no instruction that allowed the jury to convict defendant of murder—either first or second degree—under the natural and probable consequences doctrine. Thus, the jury instructions given in this case and the verdicts returned based on them demonstrate that the only way defendant's jury could have convicted him of second degree murder was to find that he actually committed the murder with malice aforethought.

15

In addition, there was no dispute at defendant's trial that he was the person who had actually shot the victim with the personal use of a firearm. Rather, defendant's defense was that he acted in self-defense or that he had shot the victim by accident. In this regard, the jury was given self-defense and justifiable homicide instructions. The jury found defendant guilty of second degree murder. In other words, the jury rejected defense's theory of the case that he did not intend to commit murder and found that defendant committed the murder as a direct perpetrator. (See *Soto*, *supra*, 51 Cal.App.5th at p. 1057.) As instructed, no juror could have elected to convict defendant as anything other than being the actual killer. Defendant was therefore necessarily convicted under a still-valid theory. (See *People v. Powell* (2021) 63 Cal.App.5th 689, 714 [rejecting the defendant's contention that direct aiding and abetting implied malice murder is an invalid legal theory].)

Without weighing conflicting evidence or making credibility determinations, the record of conviction indisputably establishes as a matter of law that the jury determined defendant was the actual killer. The instructions and verdicts show the only path to convicting defendant of second degree murder with malice aforethought and a personal-use-of-a-firearm enhancement was based on a finding he actually killed Ruben.

Because defendant was not convicted of felony murder or murder under a natural and probable consequences or other imputed malice theory, he is ineligible for resentencing as a matter of law. We therefore conclude the trial court did not err in denying defendant's petitions for resentencing under former section 1170.95.

16

IV.

DISPOSITION

The orders denying defendant's petitions for resentencing are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

Acting P. J.

We concur:

FIELDS

J.

RAPHAEL

J.