Filed 5/2/13

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE


| | |
|---|---|
| SARGON ENTERPRISES, INC., | B202789 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC209992) |
| v. | |
| UNIVERSITY OF SOUTHERN CALIFORNIA et al., | |
| Defendants and Appellants. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Terry A. Green, Judge.  Affirmed.

Browne George Ross, Allan Browne, Eric M. George, Benjamin D. Scheibe and Ira Bibbero for Plaintiff and Appellant.

Quinn Emanuel Urquhart Oliver & Sullivan, John B. Quinn, Michael E. Williams, Michael T. Lifrak, Kathleen M. Sullivan and Daniel H. Bromberg for Defendants and Appellants.

_____

Sargon Enterprises, Inc. (Sargon) appeals judgment in its breach of contract action against the University of Southern California (USC) arising out of a clinical trial of Sargon's dental implant under study at USC. In a previous appeal, this court reversed as an abuse of discretion the trial court's eve-of-trial exclusion of the trial testimony on lost profit damages of Sargon's principal expert witness, James Skorheim. The Supreme Court granted review and reversed, concluding the trial court acted within its discretion in excluding the evidence, and remanded the matter to this court for further proceedings.

On remand, Sargon submitted a supplemental brief[1] arguing that the Supreme Court announced a new rule of evidentiary procedure, and asking this court to remand the matter to the trial court for a new trial to permit Sargon to present lost profit damages in conformity with this new standard. USC has requested that we dismiss its cross-appeal. We affirm the judgment of the trial court, and dismiss USC's cross-appeal.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**1.       Procedural Summary**

*(a)       Sargon's First Appeal*

In 1992, Sargon obtained patents on a dental implant that could be implanted immediately following extraction and contained both the implant and a full restoration. Sargon wanted USC to teach the implant at its dental school, and USC requested a clinical study be conducted to allow USC to provide academic support for the device.[2] In November 1996, the parties entered into a Clinical Trial Agreement (CTA), intending to conduct a five-year study of the implant. Over a year into the study, Sargon contended USC failed to timely deliver the promised reports and otherwise breached the CTA.

On May 7, 1999, Sargon initiated this action against USC and faculty members of USC's Dental School involved in the study. Sargon asserted claims for breach of

---

[1] On remand from the Supreme Court, both parties submitted supplemental briefs in accordance with California Rules of Court, rule 8.200(b).

[2] The implant had United States Food & Drug Administration (FDA) approval permitting it be sold and used by anyone in the United States.

contract, fraud, and other torts. USC cross-claimed for breach of contract. After Sargon's tort claims and claims against the individuals were eliminated by demurrer and summary judgment, the remaining contract action against USC was tried in 2003. Before trial, the court ruled in limine and excluded evidence of Sargon's lost profit damages on the grounds they were not foreseeable to defendants. The jury awarded Sargon $433,000 compensatory damages on its breach of contract claim, and found for it on USC's cross-complaint for breach of the CTA.

Sargon appealed the judgment and this court reversed, finding the trial court erred in excluding evidence of Sargon's lost profits on the grounds of foreseeability and remanded for a new trial on that issue. This court also reversed the judgment of dismissal on Sargon's fraud claims. (*Sargon Enterprises, Inc. v. University of Southern California* (Feb. 25, 2005, B167519, B163707) [nonpub. opn.], p. 26 (*Sargon I*).)

(b)     *Exclusion of Sargon's Expert on Remand*

On remand, in April 2006, Sargon filed a second amended complaint based on two contract and four tort theories. Sargon's breach of implied covenant claim was dismissed by demurrer, its tort claims by summary adjudication, and the case again proceeded to trial on the breach of contract claim for lost profits.

Trial commenced in July 2007. Sargon's principal proof of lost profits was to be based upon the testimony of James Skorheim, who used a market-share hypothesis to compare Sargon to six multi-national companies (Big Six) that were the dominant market leaders in the industry, with collectively in excess of 80 percent of global sales of dental implants. Sargon used three core factors to evaluate the basis of the six companies' respective market shares: innovation, clinical studies, and outreach to general practice dentists. Skorheim concluded that Sargon had the same business metric of the Big Six, and its lost profits resulting from USC's breach of the CTA ranged from $220 million $1.181 billion.

During Skorheim's Evidence Code section 402 hearing, on July 17, 2007, Sargon also sought to introduce a theory of lost profits based on Sargon's 1998 revenues (a year

3

for which Sargon had concrete profit data), to which Skorheim would apply a growth rate based on industry projections. The trial court excluded this testimony, terming it a "sea change" in Skorheim's opinion. On July 30, 2007, after the trial court announced its tentative ruling excluding Skorheim's market share-based expert opinion, Sargon advised the court that it would call Skorheim as a rebuttal witness to refute USC's defense expert. Sargon advised the court that it would prepare a lost profits analysis based upon a "traditional, standard type of analysis configured to the market" that would "replicate and use the historical financial data in some substantial form" but that the opinion had not been precisely formulated. However, Sargon never put on such evidence.

The trial court issued a lengthy written decision excluding Sargon's core theory of damages, Skorheim's market-driver methodology, finding it to be too speculative. The court relied on Evidence Code sections 402 and 801, stating that "case law demands that to establish such lost profits through expert testimony, the expert must base his/her opinion on either historical performance of the company or a comparison to the profits of companies similar in size, locality, sales, products, number of employees, and other relevant financial factors. A party is not permitted to 'make up' its own factors as a basis for comparison and invite the jury to consider whether the corporations are similar." The court summarized, "Mr. Skorheim's opinions are not based upon matters upon which a reasonable expert would rely, and do not show the nature and occurrence of lost profits with evidence of reasonable reliability, because his opinion is not based on any historical data from Plaintiff or a comparison to similar businesses" and as a result, Skorheim's opinion rested on speculation and unreasonable assumptions. As Sargon had not challenged the court's ruling excluding its alternative theory of damages based on Sargon's industry-projected growth rate, or attempted to put on damages based on a rebuttal challenge to USC's own expert, the court did not address lost profits calculated on such bases.

In August 2007, the parties stipulated to entry of judgment for $433,000 in compensatory damages on the breach of contract claim to permit Sargon to seek appellate review of the in limine motion excluding lost profits.

On February 9, 2011, this court reversed the trial court's exclusion of Skorheim's expert testimony on market-driver based lost profit damages, and affirmed dismissal of Sargon's breach of the implied covenant claim and its tort claims. In its appellate briefs, Sargon did not advance any claim of trial court error with respect to its alternative theories of lost profits. At oral argument in *Sargon II*, the issue arose in response to a question from this court. (*Sargon Enterprises, Inc. v. University of Southern California* (Feb. 9, 2011, B202789, B205034) [nonpub. opn.], p. 38 (*Sargon II*).)

> (c)     *Review in the Supreme Court*

After this court reversed the trial court's exclusion of lost profit damages in *Sargon II*, USC sought review of that decision in the Supreme Court.[3] On November 26, 2012, the Supreme Court reversed, concluding that the trial court acted within its discretion under Evidence Code sections 801 and 802 in excluding Sargon's expert testimony on lost profit damages. The Supreme Court remanded the matter to this court for further proceedings consistent with the court's holding. (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 776, 782 (*Sargon*).)

## DISCUSSION

On remand from the Supreme Court, Sargon requests that we remand the matter to the trial court for a new trial on lost profit damages. Sargon argues that because the Supreme Court announced a new rule governing a trial court's discretion over expert testimony and the means by which lost profits may be calculated, and this rule was not in effect at the time of the trial court's decision, Sargon should be given the opportunity to present a new expert opinion on lost profit damages subject to scrutiny under both Evidence Code section 801 and 802 at a new trial. Thus, Sargon argues, fundamental

---

[3] Sargon did not seek review of the dismissal of its other claims in the Supreme Court, limiting the issue on review to lost profits.

5

fairness requires that it be given the chance to present lost profit evidence consistent with these new rules.[4]

USC counters that the Supreme Court's opinion was not a new rule because it was well-founded in the Evidence Code and case law, there is no basis for departing from the rule that Supreme Court decisions are applied retroactively, and in any event, Sargon's stipulated judgment precludes relitigation of this issue.

## I. *Sargon* Is Not New Law but Is Law of the Case

Sargon's "new rule" argument misses the mark for several reasons: *Sargon* did not announce a new rule, and the Supreme Court in *Sargon* addressed the merits of the trial court's ruling excluding Skorheim's testimony, making its ruling law of the case. Thus, Sargon is precluded from obtaining a new trial in this matter to put on Skorheim's reformulated expert testimony.

In making its argument here, Sargon relies on cases where the trial court granted a new trial for excessive damages and permitted the plaintiff to reformulate their evidence on retrial. (See, e.g., *Resort Video, Ltd. v. Laser Video, Inc.* (1995) 35 Cal.App.4th 1679; *Dell'Oca v. Bank of New York Trust Co., N.A.* (2008) 159 Cal.App.4th 531.)[5] As USC recognizes, Sargon's new rule argument also borrows from the doctrine of retroactivity of judicial decisions, a doctrine based on whether the new decision announces a new rule of law. (See *Rose v. Hudson* (2007) 153 Cal.App.4th 641, 653.)

---

[4] Sargon has requested that we take judicial notice of Internet materials consisting of articles from law firm websites and blogs hailing *Sargon* as a change in the evidentiary standard. We deny the request. (Evid. Code, §§ 452, 459.)

[5] In *Resort Video*, *supra*, 35 Cal.App.4th 1679, the Court of Appeal affirmed the grant of a new trial based on excessive damages because trial court found the basis of the damages was speculative. The matter was remanded for a new trial solely on the issue of the amount of damages. (*Id.* at p. 1701.) Similarly, in *Dell'Oca v. Bank of New York Trust Co., N.A.*, *supra*, 159 Cal.App.4th 531, the trial court granted a new trial because the damage award was excessive and based on speculative damages. "By granting the motion for new trial, the [trial] court gave plaintiffs the opportunity to try again, presumably recognizing that they might be able to produce evidence to support their theory." (*Id.* at p. 549.)

6

In general, judicial decisions of the Supreme Court are given retroactive effect to all pending cases not yet final on review. (*Newman v. Emerson Radio Corp.* (1989) 48 Cal.3d 973, 978; *In re Borlik* (2011) 194 Cal.App.4th 30, 40.) An exception exists where the decision changes a settled rule on which the parties have relied. (*Brennan v. Tremco, Inc.* (2001) 25 Cal.4th 310, 318.) In deciding to give a decision retroactive effect, the threshold inquiry is whether the decision establishes a new rule of law. If there is no new rule of law, """"no question of retroactivity arises," because there is no material change in the law. [Citations.] In that event the decision simply becomes part of the body of case law of this state, and under ordinary principles of stare decisis applies in all cases not yet final.'" (*In re Borlik*, at p. 40.)

"The most common examples of decisions that do not establish a new rule of law in this sense are those which explain or refine the holding of a prior case, those which apply an existing precedent to a different fact situation, even if the result may be said to 'extend' the precedent, or those which draw a conclusion that was clearly implied in or anticipated by previous opinions. [Citations.]" (*People v. Guerra* (1984) 37 Cal.3d 385, 399.) Other examples include a decision in which the Supreme Court gave effect to a statutory rule that the courts had theretofore misconstrued or had not definitively addressed. (*Id.* at p. 399, fn. 13.)

*Sargon* did not announce a new rule, but instead relied on prior statutory and case law authority to evaluate foundational issues with expert testimony. *Sargon* began its discussion by quoting Judge Friendly of the federal court, who noted that the trial court should not set the evidentiary bar too high, and commenting that Judge Friendly could "just as well have described California law and California courts." (55 Cal.4th at p. 769.) *Sargon* then turned to Evidence Code section 801[6] and *Lockheed Litigation Cases* (2004)

---

[6] Evidence Code section 801 provides that, "If a witness is testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is: [¶] (a) Related to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact; and [¶] (b) Based on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known

115 Cal.App.4th 558 to evaluate the trial court's ability to assess foundational issues with expert testimony. Under Evidence Code section 801, and in particular Evidence Code section 801, subdivision (b), the trial court "acts as a gatekeeper to exclude speculative or irrelevant expert opinion. As we recently explained, '[T]he expert's opinion may not be based "on assumptions of fact without evidentiary support [citation], or on speculative and conjectural factors . . . . [¶] Exclusion of expert opinions that rest on guess, surmise or conjecture [citation] is an inherent corollary to the foundation predicate for admission of the expert testimony: will the testimony assist the trier of fact to evaluate the issues it must decide?'" (*Sargon*, at p. 770.)

Sargon also applied Evidence Code section 802,[7] citing a recent law review article (Imwinkelried & Faigman, *Evidence Code Section 802: The Neglected Key to Rationalizing the California Law of Expert Testimony* (2009) 42 Loyola L.A. L.Rev. 427) that recognized the utility of Evidence Code section 802 as a foundational tool for trial courts. Sargon observed that section 802 "indicates the court may inquire into the expert's reasons for an opinion." As pointed out by Imwinkelried and Faigman, "'The stark contrast between the wording of the [Evidence Code section 801 and section 802] strongly suggests that although under section 801(b) the judge may consider only the acceptability of the generic type of information the expert relies on, the judge is not so limited under section 802.'" (*Sargon*, *supra*, 55 Cal.4th at p. 771.) As a result, *Sargon*

___

to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion."

[7] Evidence Code section 802 provides, "A witness testifying in the form of an opinion may state on direct examination the reasons for his opinion and the matter (including, in the case of an expert, his special knowledge, skill, experience, training, and education) upon which it is based, unless he is precluded by law from using such reasons or matter as a basis for his opinion. The court in its discretion may require that a witness before testifying in the form of an opinion be first examined concerning the matter upon which his opinion is based."

found that under both provisions, the trial court acted as a gatekeeper to exclude expert opinion testimony that is (1) based on matter of a type on which an expert may not reasonably rely, (2) based on reasons unsupported by the material on which the expert relies, or (3) speculative. Nonetheless, the trial court's focus must remain on principles and methodologies, not on the expert's conclusions. (*Id.* at p. 772.)

Here, our review of *Sargon*'s analytic arc confirms that it did nothing more than explain the reach of Evidence Code sections 801 and 802 and the foundational roles those statutes play in the admission or exclusion of expert testimony. As such, even if *Sargon* may be said to "extend" those statutes, or give them new meaning, it was a result implied in or anticipated by the statutory language itself. Foundational rules are nothing new, and the basic foundation rule is found in Evidence Code section 402. Expert testimony has its own rules given its issues of reliability because the expert is not testifying to percipient facts, but instead relies on a multitude of materials, including hearsay, in forming his or her opinion. Further, the expert is not bound by actual facts in rendering an opinion, but may opine on hypothetical situations or use an approach to the facts and underlying materials that they do not support. Thus, expert opinions are only as good as the material relied on, or the methodology used. These rules are nothing new; *Sargon* did not upend the foundational rules of evidence, or rewrite the rules on admissibility of expert testimony.

More precisely here, the law of the case doctrine is the legal principle governing whether Sargon may seek retrial of lost profits. Under that doctrine, "'the decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case.'" (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 301.) The doctrine applies to decisions of intermediate appellate courts as well as courts of last resort. The doctrine promotes finality by preventing relitigation of issues previously decided. (*Yu v. Signet Bank/Virginia* (2002) 103 Cal.App.4th 298, 310.) Although the doctrine does not apply to points of law that might

have been determined, but were not decided in the prior appeal, the doctrine does extend to questions that were implicitly determined because they were essential to the prior decision. (*Nally v. Grace Community Church*, *supra*, 47 Cal.App.3d at p. 302; *Estate of Horman* (1971) 5 Cal.3d 62, 73.) "The doctrine is one of procedure that prevents parties from seeking reconsideration of an issue already decided absent some significant change in circumstances." (*People v. Yokely* (2010) 183 Cal.App.4th 1264, 1273.)

Here, the Supreme Court applied these already extant evidentiary principles to Skorheim's testimony and concluded the trial court did not abuse its discretion in excluding his opinion. After evaluating the threshold of evidence needed to establish lost profits damages under Evidence Code section 801 and 802, the court stated, "We now apply these principles of this case," and found that "[t]o the extent the expert relied on data that is not relevant to the measure of lost profit damages, the trial court acted within its discretion to exclude the testimony" because it was not based upon matters that was a type that may reasonably be relied on by an expert, citing Evidence Code section 801, subdivision (b). (*Sargon*, *supra*, 55 Cal.4th at pp. 775, 776.) *Sargon* also found that the trial court properly found Skorheim's testimony too speculative because Skorheim did not base his lost profit estimates on any market share Sargon actually achieved. Ultimately, "Skorheim's reasoning was circular. He concluded the 'Big Six' were innovative because they were successful and that the small companies (excluding Sargon) were not innovative because they were less successful." (*Id.* at p. 777.) *Sargon* reiterated the trial court's reasoning that, "'As there is no evidentiary basis that equates the degree of innovativeness with the degree of difference in the market share, the question posed to the jury—to rank innovativeness and assign a market share, the *sine qua non* of Mr. Skorheim's opinion—has no rational basis.'" (*Id.* at p. 778.) Further, Skorheim's testimony was speculative because there was no basis to conclude that Sargon, which had no marketing or research and development department, could have developed such a department to enable it to compete with the Big Six. (*Id.* at p. 780.) The court concluded that its prohibition on Skorheim's testimony did not amount to a flat prohibition on lost

profits involving a revolutionary product. "Other avenues might exist to show lost profits. An expert could use a company's actual profits, a comparison to the profits of similar companies, or other objective evidence to project lost profits. Sargon itself argues that the record in this case contains evidence of specific lost sales and canceled contracts due to USC's failure to complete the study. Evidence of this kind might support reasonably certain lost profit estimates." (*Id.* at p. 781.) Here, however, Sargon, by entering into the stipulated judgment, elected not to challenge the trial court's rulings excluding its evidence of lost profits which was not derived from Skorheim's lost profits theory.

This result in *Sargon* is law of the case and governs the further conduct of this proceeding: the Supreme Court has determined the trial court ruled correctly, thus foreclosing further action in the trial court on lost profit damages. Where an appellate court states in its opinion a principle of law necessary to the decision, that principle becomes law of the case and must be adhered to in all subsequent proceedings. The law of the case doctrine illustrates why Sargon's new trial argument fails because under the doctrine of the law of the case, the case may *not* go over ground that has been covered before in an appellate court. New trial motions, as creatures of statute, are solely granted on the grounds enumerated in Code of Civil Procedure section 657; all other grounds are in excess of jurisdiction. (*Concerned Citizens Coalition of Stockton v. City of Stockton* (2005) 128 Cal.App.4th 70, 79.) As the new trial statute demonstrates, new trial motions only cover proceedings in the trial court and do not govern where an appeal has been taken and ruled upon.

Sargon is not entitled to a retrial on lost profits.

## II.     The Stipulated Judgment Precludes a New Trial on a New Theory of Damages

The stipulated judgment entered into between the parties provided in relevant part that the parties "agree that this Court should enter a final judgment . . . . This judgment is being entered not for purposes of settlement. The parties agree and acknowledge that the

11

sole purpose of the stipulated judgment is to hasten the transfer of this case to the appellate court and facilitate Sargon's appeal following an adverse determination of a critical issue. It is expressly understood that in entering this stipulated judgment, all parties are preserving any and all rights to challenge any and all rulings by this Court following the prior remand from the Court of Appeal, including but not limited to each such matter set forth in paragraphs C and D above, in connection with any appeal of this stipulated judgment." Paragraph D of the stipulated judgment stated that the trial court's ruling excluding Skorheim's testimony "address[ed] a critical issue sought to be tried in the case given that, with the *in limine* ruling in place, (i) Sargon would be precluded from proving or attempting to prove virtually all of the lost profit damages it claims were caused by USC's contract breach, and (ii) Sargon might seek, if at all and at most, to recover relatively minimal lost profit damages Sargon alleges were caused by USC's breach."

A stipulated judgment is as conclusive as to the matters in issue it determines as a judgment after trial. (*Citizens for Open Access etc. v. Seadrift Assn.* (1998) 60 Cal.App.4th 1053, 1065.) Although "a stipulated judgment normally concludes all matters put into issue by the pleadings, the parties can agree to restrict its scope by expressly withdrawing an issue from the consent judgment." (*Ellena v. State of California* (1977) 69 Cal.App.3d 245, 260.) A stipulated judgment that reserves an issue may run afoul of the "one final judgment rule" for purposes of appeal if the stipulation between the parties facilities potential future litigation of any of claims dismissed to facilitate an appeal. (*Abatti v. Imperial Irrigation Dist.* (2012) 205 Cal.App.4th 650, 662.) The one final judgment rule provides that an appeal may be taken only from a final judgment, and a judgment that disposes of fewer than all of the causes of action of the pleadings is not yet final for purposes of appeal. (*Ibid.*)

Under the doctrine of res judicata, a valid, final judgment on the merits is a bar to a subsequent action by parties or their privies on the same cause of action. (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896.) If the plaintiff "prevails in an action, the

12

claim is merged into the judgment and may not be asserted in a subsequent lawsuit"; if the defendant prevails, the judgment is "a bar to further relitigation of the same cause of action." (*Id*. at pp. 896–897.)

Stipulated judgments are interpreted according to ordinary contractual principles. In the absence of extrinsic evidence, we may interpret it as a matter of law. (*Jamieson v. City Council of the City of Carpinteria* (2012) 204 Cal.App.4th 755, 761.) The stipulated judgment here does not reserve any issues for further determination, but merely reserves Sargon's right to appeal all of the adverse rulings in the trial court. The parties entered into the stipulated judgment after Sargon obviously gave careful consideration to its strategic options regarding its lost profits evidence. The stipulated judgment was intended to accelerate the appeal of the trial court's rejection of Sargon's core theory of damages. Thus, the judgment was final as to all issues before this court on appeal, including any and all theories of lost profit damages that were asserted or might have been asserted in the trial court, even those that might have been based on nonspeculative data.

Finally, even if we were to agree for the sake of argument that the stipulated judgment reserved for appeal the trial court's rulings on the alternative theories of lost profit damages after the trial court excluded Skorheim's market driver approach, Sargon's decision not to assert in *Sargon II* error with respect to the trial court's exclusion of alternative lost profit damage theories waived the issue, thereby precluding any trial on any potentially reserved issue. (*Kelly v. CB&I Construction, Inc.* (2009) 179 Cal.App.4th 442, 451–452.)

We affirm the judgment of the trial court.

## III.    Cross-appeal

USC has requested that we dismiss its cross-appeal from the award of postoffer attorney fees to Sargon on its Code of Civil Procedure section 998 offer. Sargon indicates it has no opposition to this request. We therefore dismiss USC's cross-appeal.

13

## DISPOSITION

Our previous opinion in this case is vacated. The judgment of the superior court is affirmed. The parties are to bear their own costs on appeal.

CERTIFIED FOR PUBLICATION.


JOHNSON, J.


We concur:


MALLANO, P. J.


CHANEY, J.

14