Filed 5/22/26  Asi v. Hollywood Foreign Press Assn. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| HUSAM ASI, | B349640 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 22STCV15728) |
| v. | |
| HOLLYWOOD FOREIGN PRESS ASSOCIATION, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel M. Crowley, Judge.  Affirmed.

Husam Asi, in pro. per., for Plaintiff and Appellant.

Sinclair Braun Kargher and Alexander M. Kargher; Latham & Watkins, Marvin S. Putnam, Robert J. Ellison and Chandler S. Howell for Defendant and Respondent.

## INTRODUCTION

Here we decide the trial court correctly granted the second anti-SLAPP special motion to strike brought by defendant Hollywood Foreign Press Association (HFPA) in this action filed by Husam Asi (Asi). (Code Civ. Proc., § 425.16.)[1] In 2022, an entertainment news outlet accused Asi of sexual misconduct. In a previous appeal, we determined the trial court should have granted HFPA's anti-SLAPP motion to strike certain causes of action arising from its public statements to the press regarding the allegations against Asi.

Upon remand, Asi amended his complaint. In response, HFPA filed a second anti-SLAPP motion to strike, arguing that Asi improperly reasserted claims based on the same public statements at issue in the previous appeal. HFPA's motion also targeted newly asserted claims arising from its preservation and review of certain emails stored on an email account HFPA provided to Asi to conduct HFPA business.

The trial court granted HFPA's motion to strike in its entirety, and Asi now appeals. For the reasons set forth below, we agree that the challenged claims were properly stricken under our anti-SLAPP statute and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  *Background*

The facts of this case are well known to this court and the parties. We take judicial notice of our prior unpublished opinion in *Asi v. Hollywood Foreign Press Association* (Oct. 13, 2023, No. B327002) (*Asi I*), and decline to repeat the summary of the parties' dispute set forth therein. Instead, we

---

[1] The term "SLAPP" stands for strategic lawsuit against public participation. All further statutory references are to the Code of Civil Procedure unless otherwise specified.

provide a brief sketch of the background proceedings necessary to provide context for the arguments raised in this appeal.

In 2022, the entertainment news outlet TheWrap published an article detailing allegations made by three women accusing Asi of sexual misconduct. When approached for comment by TheWrap and other press outlets, HFPA stated that it took the allegations against Asi seriously and had suspended Asi from HFPA pending an investigation by outside counsel.

Shortly thereafter, Asi filed suit against HFPA, alleging tort and contract causes of action based, in part, on HFPA's statements to TheWrap and The Los Angeles Times regarding the accusations against Asi. In response, HFPA filed an anti-SLAPP motion to strike Asi's claims stemming from its statements to the press. In *Asi I*, a different panel of this Court determined that HFPA's statements to the press—which the parties both characterized as "press releases"—were protected activity and that Asi could not establish a probability of success on certain causes of action arising from those statements.

II.    *Asi's HFPA Email Account*

As HFPA's first anti-SLAPP motion was pending in the trial court, a dispute arose between the parties regarding an email account HFPA provided to Asi: asi@hfpa.org. In August 2022, HFPA became aware that Asi attempted to remove over 30,000 emails from his HFPA account. HFPA was able to recover many of the emails, which it subsequently made available to its counsel at Latham & Watkins LLP (Latham). Latham performed an analysis of the metadata from the emails recovered by HFPA and determined that some of the emails were between Asi and his former legal counsel. Latham sequestered those emails from review.

3

Latham contacted Asi's then-current counsel at Locke Lord LLP (Locke Lord), arguing that Asi's attempt to delete the emails from his HFPA account was "intentional and extensive spoliation of highly relevant evidence." Latham also provided a copy of the metadata report documenting the emails between Asi and his former counsel. In response, Locke Lord argued that Asi "did not intentionally delete any potentially discoverable documents" and instead had created a "full backup of the data from that email account." Locke Lord offered to provide Latham with a full copy of the email backup made by Asi on the condition that HFPA and Latham agreed not to review any of the emails between Asi and his former counsel.

Latham accepted Locke Lord's offer, and in October 2022, Locke Lord produced a full backup of Asi's HFPA email account to Latham. Latham sequestered the emails identified on its metadata report but reviewed other emails from Asi's HFPA account in the course of discovery and motion practice in this litigation.

III.  *Pleading Amendments Following Remand*

Following remand after *Asi I*, Asi made repeated efforts to amend his complaint. In April 2024, Asi filed a first amended complaint. After filing his first amended complaint, Asi wanted to again amend his complaint. The parties agreed to extend HFPA's time to respond to the first amended complaint until the trial court ruled on Asi's motion for leave to file a second amended complaint. At this time, Asi was acting in propria persona and he encountered technical and procedural difficulties in filing his motion for leave to amend. As a result, his motion was not granted until November 2024. Asi then experienced further technical difficulties in filing his second amended complaint. On January 3, 2025, Asi was able to successfully file his amended

4

pleading, now captioned as the third amended complaint (TAC). The TAC is Asi's operative pleading.

The TAC removed all references to HFPA's "press releases" but added new allegations regarding unidentified statements made by HFPA. For example, the TAC alleges HFPA improperly announced its investigation into TheWrap's allegations, and publicly shamed Asi by disseminating "harmful statements" regarding the allegations against him. These allegations are incorporated by reference in all causes of action asserted in the TAC.

The TAC also added allegations and causes of action arising from HFPA's preservation and review of the emails from Asi's HFPA email account. Specifically, the TAC alleged that when Asi received notice of his expulsion from HFPA in August 2022, he took measures to "preserve" his emails on HFPA's system "to ensure that no potentially relevant evidence was lost in connection with the ongoing litigation with the HFPA." According to the TAC, HFPA "intervened to stop the deletion process of [Asi's] data on their system, thus gaining access to" the emails in his HFPA email account. HFPA reviewed some of those emails, "ultimately serving them as part of discovery material" in this litigation. The TAC claimed that "HFPA's unauthorized access to these emails gave them an unfair advantage in their litigation against [Asi], as they were able to pass this sensitive information to their lawyers."

Asi's causes of action for intrusion upon seclusion and violation of the Stored Communications Act are based entirely on the allegation that HFPA improperly accessed and reviewed certain emails on Asi's HFPA email account during this lawsuit. Asi's cause of action for intentional infliction of emotional distress incorporates all the other allegations of the TAC and

therefore arises in part from HFPA's public statements and use of the emails from Asi's HFPA account.

### A. *Second Anti-SLAPP Motion to Strike*

HFPA filed an anti-SLAPP motion to strike certain portions of the TAC. HFPA's motion challenged two categories of claims raised in the TAC: (1) claims based on HFPA's public statements regarding the allegations of sexual misconduct published by TheWrap, and (2) claims based on HFPA's preservation and review of emails from Asi's HFPA email account.

Specifically, HFPA sought to strike portions of Asi's causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, interference with contract, interference with prospective economic relations, retaliation under Labor Code section 1102.5, and intentional infliction of emotional distress, to the extent they arose from HFPA's public statements regarding the allegations of sexual misconduct against Asi.[2] HFPA argued these causes of action were all "based, in part, on the materially identical allegation that Asi was injured by the HFPA's press releases." HFPA claimed Asi disregarded the holding of *Asi I* and improperly re-inserted claims that this court previously determined were barred under section 425.16.

Additionally, HFPA argued that Asi's email claims arose from protected litigation-related activity under section 425.16, subdivision (e)(4). HFPA also argued that Asi's email claims were based on allegations that HFPA used the emails from his HFPA account to obtain an unfair advantage in the litigation. HFPA asserted that Asi could not establish a probability of success on his

---

[2] The relevant allegations appear at paragraphs 54, 58, 65, 66, 67, 75, 88, 96, 115, 180, 181, 182, 183 of the TAC.

6

email claims because they were barred by the litigation privilege under Civil Code section 47.

B.    *Asi's Opposition*

Asi opposed the motion to strike.  Asi claimed the challenged portions of the TAC relating to HFPA's public statements were not based on HFPA's press releases but instead based on "communications wholly separate and apart from the press releases."  In a declaration submitted with his opposition, Asi identified only two such communications.  The first was a February 9, 2022, email from HFPA's president to its members which acknowledged TheWrap's story about Asi, stated that he had been placed on probation pending an investigation by outside counsel, and quoted, verbatim, the text of one of the press releases at issue in *Asi I*.  The second communication identified by Asi was a statement made by "HFPA crisis manager James Lee" to a reporter from The Los Angeles Times acknowledging that HFPA "automatically placed [Asi] on probation once a sexual assault claim arose."  Asi argued that because the challenged claims were not based on the press releases, he did not need to establish a probability of success on his claims arising from HFPA's public statements.

Asi also argued his email claims did not arise from any speech or petitioning undertaken by HFPA on a "public issue" under section 425.16, subdivision (e).  Alternatively, he asserted that HFPA was judicially estopped from arguing that its investigation into the accusations against Asi was a matter of public interest, because in obtaining a protective order from the court, HFPA previously argued that certain documents related to that investigation were confidential.  Asi also argued his email claims were not barred by California's litigation privilege.

Finally, Asi argued HFPA's motion to strike was untimely because some of the allegations it sought to strike were first alleged in Asi's first amended complaint, filed in April 2024. Asi argued HFPA's motion to strike was filed in February 2025, well past the 60-day time limit to file an anti-SLAPP motion to strike claims asserted in his first amended complaint.

In response to Asi's opposition, HFPA filed a set of 24 evidentiary objections to certain portions of Asi's declaration, as well as one of the exhibits attached thereto.

### C.    *Trial Court Ruling*

The trial court sustained HFPA's objections to Asi's declaration and granted the anti-SLAPP motion to strike in its entirety. The court began by determining that HFPA's motion was timely. The court noted that the parties agreed that HFPA's "responsive pleading deadline was extended through the time that the TAC was filed." The court noted that because of the repeated technical difficulties Asi experienced in filing his motions for leave to amend and relevant amended complaints, his operative TAC was not filed until January 3, 2025. The court concluded that HFPA's anti-SLAPP motion to strike was timely filed within 60 days of the filing of the TAC.

Turning to the merits of HFPA's motion, the trial court agreed that Asi's claims arising from HFPA's public statements were materially identical to the press release claims at issue in *Asi I*. The court determined that for the reasons outlined in *Asi I*, the challenged claims arose from HFPA's protected activity and Asi failed to present "*any* evidence" establishing a probability of prevailing on the claims arising from HFPA's public statements. The trial court also determined that HFPA's access and use of Asi's emails on its email server constituted protected activity under section

8

425.16, subdivisions (e)(2) and (e)(4). The court concluded that Asi failed to provide any evidence in support of his email claims.

Asi timely appealed the trial court's order.

## DISCUSSION

I.    *Anti-SLAPP Procedure*

In evaluating an anti-SLAPP motion to strike, courts conduct a two-step analysis. First, the court decides whether a defendant has met its "burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).) Second, if a defendant meets its burden on the threshold showing, the court decides if the plaintiff "has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

We review the trial court's order denying the anti-SLAPP motion de novo, applying the same two-step analysis. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.) We independently review whether a moving party has made a threshold showing that the challenged cause of action arises from protected activity. (*Grewal v. Jammu* (2011) 191 Cal.App.4th 977, 988.)

II.    *Claims Arising from HFPA's Public Statements*

With the exception of Asi's sixth cause of action for retaliation under Labor Code section 1102.5, all the challenged causes of action stemming, in part, from HFPA's public statements were both asserted in Asi's original complaint and challenged by HFPA's first anti-SLAPP motion in *Asi I*.

9

A.    *Causes of Action Asserted in Both Pleadings*

The trial court correctly determined that, to the extent they arise from HFPA's public statements, Asi's causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, interference with contract, interference with prospective economic relations, and intentional infliction of emotional distress are barred under our holding in *Asi I.*

"There is no such thing as granting an anti-SLAPP motion with leave to amend." (*Dickinson v. Cosby* (2017) 17 Cal.App.5th 655, 676 (*Dickinson*).) "Once the trial court has determined the speech at issue is constitutionally protected, it may not grant leave to amend to omit facts to take the claim out of the protection of section 425.16." (*Mobile Medical Services, etc. v. Rajaram* (2015) 241 Cal.App.4th 164, 171.) An appellate court's decision on an anti-SLAPP motion to strike becomes the law of the case that is binding on the parties upon remand. (*Finato v. Keith A. Fink & Associates* (2021) 68 Cal.App.5th 136, 149 (*Finato*).) Under the law of the case doctrine, "'"the decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case."' [Citation.]" (*Sargon Enterprises, Inc. v. University of Southern California* (2013) 215 Cal.App.4th 1495, 1505 (*Sargon*).) Accordingly, "to the extent the allegations in [the TAC] are analogous to those struck in [*Asi I*], they are precluded by that earlier opinion." (*Finato,* at p. 148.)

Asi argues the TAC does not assert any claims barred by *Asi I* because the TAC removed any reference to press releases. This argument misses the mark. The question is not whether the TAC repeats the "specific language" struck in *Asi I*, rather, we review the substance of the allegations of the TAC

10

to determine if they are "analogous" to those raised in Asi's original complaint. (*Finato, supra,* 68 Cal.App.5th at pp. 145, 148.) We conclude that they are.

In opposing HFPA's motion, Asi identified only two statements that form the basis of this category of challenged claims. A review of these statements establishes that the challenged portions of the TAC are based on the same public statements at issue in *Asi I*.[3] The first statement was an email sent to HFPA's members which simply quotes one of the press releases at issue in *Asi I*. The second was a statement made to a reporter from The Los Angeles Times, which similarly mirrored the "press release" to The Los Angeles Times at issue in *Asi I*. It is therefore clear that the challenged portions of the TAC are directly analogous to the "press release" claims in Asi's original complaint. Asi cannot plead his way around the holding of *Asi I* by simply recharacterizing HFPA's "press releases" as a "leak" or "public statement." (*Dickinson, supra,* 17 Cal.App.5th at p. 676 ["a plaintiff whose complaint is stricken by a successful anti-SLAPP motion cannot try again with an amended complaint"].)

As Asi's claims regarding HFPA's public statements are materially identical to the press release claims at issue in *Asi I,* we conclude the trial court correctly determined these duplicative claims in the TAC are barred

---

[3] Asi argues the trial court erred in sustaining HFPA's objections to his declaration "in a blanket, unexplained ruling" that was made "*en masse* without analysis." Asi has forfeited this claim of error by failing to raise this objection in the trial court. (*Leonardini v. Shell Oil Co.* (1989) 216 Cal.App.3d 547, 584.) Even if we were to assume the trial court erred in this regard, we can only conclude that any such error was harmless as we have reviewed the challenged portions of Asi's declaration and determined they do not alter the outcome of our decision in this case.

under the law of the case doctrine. (*Finato, supra,* 68 Cal.App.5th at pp. 148–149.)

## B. *Retaliation under Labor Code section 1102.5*

We also affirm the trial court's ruling with respect to Asi's newly asserted cause of action under Labor Code section 1102.5.

### 1. *Prong One*

Asi's original complaint did not assert a claim under Labor Code section 1102.5. As pled in the TAC, Asi's retaliation claim expressly seeks to hold HFPA liable based on HFPA's "disseminating . . . allegations [of sexual assault], prompting the BBC to suspend [Asi]'s show and resulting in severe damage to [Asi]'s reputation and loss of access to press interviews." As we noted above, the only examples Asi has provided of this wrongful dissemination by HFPA are two statements which mirror the press releases at issue in *Asi I.* The newly asserted retaliation cause of action is therefore based, in part, on conduct that *Asi I* determined was protected activity under prong one.[4] Our prior determination on this point is binding on the parties

---

[4] HFPA's anti-SLAPP motion did not seek to strike Asi's cause of action for retaliation in its entirety, but rather only sought to strike the claim within that cause of action that HFPA's public statements regarding TheWrap's allegations constituted improper retaliation against Asi under the Labor Code. (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1010 ["Analysis of an anti-SLAPP motion is not confined to evaluating whether an entire cause of action, as pleaded by the plaintiff, arises from protected activity" and instead courts "should analyze each claim for relief" asserted within a cause of action to determine if the challenged acts are protected].) "[T]o the extent any acts are unprotected, the claims based on those acts will survive." (*Id.* at p. 1012.) Therefore, to the extent the challenged causes of action are also partially based on other allegations of non-protected conduct

under the law of the case doctrine. (*Sargon, supra,* 215 Cal.App.4th at p. 1505; *Finato, supra,* 68 Cal.App.5th at p. 149.)

As HFPA has shown Asi's retaliation claim arises in part from protected activity, the question becomes whether Asi can establish a probability of success on the merits of such a cause of action under prong two. We conclude he cannot.

### 2. *Prong Two*

Under the second anti-SLAPP prong, a plaintiff "need only establish that his or her claim has 'minimal merit.'" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291.) To satisfy this burden, the plaintiff "'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'" (*Ibid*.) "The prima facie showing of merit must be made with evidence that is admissible at trial." (*Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1289.)

Asi has not carried his burden to establish a probability that he will prevail on his retaliation claim under the Labor Code. Asi's opposition to HFPA's motion did not identify the elements of his retaliation claim or provide the court with any evidence or argument showing a probability of establishing those elements. Instead, he merely argued that he did not have to make a showing under prong two because HFPA was factually incorrect in asserting that his retaliation claim was based in any part on the press releases at issue in *Asi I*. As Asi did not endeavor to establish a probability of success on his cause of action under Labor Code section 1102.5, we find no

---

by HFPA, those other allegations were not encompassed by HFPA's anti-SLAPP motion to strike and remain in the case.

error in the trial court's determination that Asi failed to make such a showing.

In an attempt to avoid this result, Asi argues for the first time on appeal that he can establish such a probability of success under prong two. His argument is unconvincing for several reasons.

First, as Asi failed to raise this factual argument in the trial court, he is generally prohibited from raising it for the first time on appeal. (*In re Marriage of Nassimi* (2016) 3 Cal.App.5th 667, 695 [""theories not raised in the trial court cannot be asserted for the first time on appeal""]; *Bocanegra v. Jakubowski* (2015) 241 Cal.App.4th 848, 857 [""a party is not permitted to change its position on appeal and raise new issues not presented in the trial court""].)

Second, Asi's argument is premised on broad assertions of law and fact that are unsupported by any citation to the record or pertinent authority. For example, Asi claims in generalized fashion that he was "subjected . . . to a series of escalating adverse employment actions" without offering any legal authority or analysis suggesting that HFPA's public statements acknowledging the investigation and suspension constitute an "adverse employment action" under California law. He also asserts that he engaged in "protected activity" by "reporting what he believed to be violations of law and HFPA policies," and that HFPA levied "false allegations of sexual misconduct and assault" against him. These factual claims are not supported by any citation to the record showing Asi presented evidence on these points in opposing HFPA's motion.

Asi's failure to support his new argument with adequate citation to the record and legal authority is fatal on appeal. "It is the parties' responsibility to support claims of error with meaningful argument and citation to

14

authority. [Citations.] When they do not furnish legal argument with citation to authority on a particular point, we may treat the point as forfeited and pass it without consideration. [Citations.]" (*Shaw v. Los Angeles Unified School Dist.* (2023) 95 Cal.App.5th 740, 754 (*Shaw*).) "We are not required to examine undeveloped claims or to supply arguments for the litigants. [Citations.]" (*Ibid.*)

For these reasons, we conclude Asi has failed to establish a probability of success on his retaliation claim under Labor Code section 1102.5. We therefore affirm the trial court's ruling striking Asi's cause of action for retaliation under the Labor Code to the extent it is based on HFPA's public statements regarding the allegations against him.

III. *Claims Arising from Asi's Emails*

Asi argues the trial court erred in granting HFPA's anti-SLAPP motion to strike the claims arising from HFPA's access to and review of emails from Asi's HFPA email account. We find no error by the trial court and affirm.

A. *Prong One*

The protections of section 425.16 extend to "any act" taken in furtherance of the right to petition. (§ 425.16, subd. (b)(1).) At the first step of the anti-SLAPP analysis, "the moving party must establish both (1) that its act constituted protected activity and (2) the opposing party's cause of action arose from that protected activity." (*Colyear v. Rolling Hills Community Assn. of Rancho Palos Verdes* (2017) 9 Cal.App.5th 119, 130; *Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 887.)

A "claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to

15

some different act for which liability is asserted." (*Park, supra*, 2 Cal.5th at p. 1060.) To determine whether a challenged allegation or claim "arises from" protected activity we must determine whether protected activity was the alleged injury-producing act forming the basis for the claim. (*Id*. at pp. 1062–1063.) "Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Baral, supra*, 1 Cal.5th at p. 394.)

Protected activity has been statutorily defined to include four categories of statements or conduct. (§ 425.16, subd. (e).) HFPA argues Asi's email claims fall within three of the statutory definitions of protected conduct enumerated at section 425.16, subdivisions (e)(1), (e)(2), and (e)(4). Subdivisions (e)(1) and (e)(2) protect "any written or oral statement or writing made before a . . . judicial proceeding" or "in connection with an issue under consideration or review by a . . . judicial body." (§ 425.16, subds. (e)(1), (e)(2).) Subdivision (e)(4) protects "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).)

In conducting the anti-SLAPP analysis, Asi is bound by the allegations of the TAC. (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 672 ["As is true with summary judgment motions, the issues in an anti-SLAPP motion are framed by the pleadings"]; accord *Medical Marijuana, Inc. v. ProjectCBD.com* (2020) 46 Cal.App.5th 869, 893.) The TAC alleges that Asi decided to back up his HFPA email account "to ensure that no potentially relevant evidence was lost in connection with the ongoing litigation with the HFPA." The TAC therefore expressly acknowledges that the emails on Asi's HFPA account were potential evidence in this litigation. The TAC also

16

alleges that HFPA accessed Asi's emails during this litigation in order "to stop the deletion process of [Asi's] data on their system." The TAC claims HFPA wrongfully gave his emails to its attorneys in this action and improperly produced his emails during discovery in this litigation. The TAC asserts Asi faced an "unfair disadvantage" in this litigation because his emails were "exploited by [HFPA] and [its] legal counsel."

Taken together, the allegations of the TAC make it clear that the gravamen of Asi's email claims is based on actions taken by HFPA in connection with Asi's lawsuit. HFPA's conduct in accessing, preserving, and utilizing Asi's emails for litigation-related purposes is the injury-producing conduct alleged in Asi's email claims. (*Park, supra*, 2 Cal.5th at p. 1060.)

### 1. *Anti-SLAPP Protections Extend to Non-Communicative Conduct*

Asi argues HFPA's conduct in accessing and reviewing his emails is not entitled to anti-SLAPP protection because it was not communicative in nature. We agree that Asi's email claims arise, in part, from non-communicative conduct by HFPA. However, the protections afforded by the anti-SLAPP statute extend to both "litigation-related speech and activity." (*Thayer v. Kabateck Brown Kellner LLP* (2012) 207 Cal.App.4th 141, 154; *Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1537 [anti-SLAPP statute "applies not only to the filing of lawsuits, but extends to conduct that relates to such litigation"].)

Courts have adopted "a fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16." (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 908.) Non-communicative acts have been held to constitute protected activity under the statute. (See, e.g.,

17

*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1062–1065 (*Rusheen*) [concluding that attorneys' non-communicative actions to enforce a judgment and levy on property were within the scope of section 425.16]; *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 672 [holding that non-communicative litigation tactics employed to benefit a party in pending litigation, such as withholding of responsive documents in discovery, were protected activity under § 425.16, subd. (e)(4)].)

Asi's arguments to the contrary are unpersuasive. Asi claims that HFPA's conduct cannot constitute litigation-related activity because at the time HFPA accessed his emails in August 2022, discovery in this case was stayed "due to HFPA's own anti-SLAPP motion." It is true that under section 425.16, subdivision (g), "All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this section." (§ 425.16, subd. (g).) However, the stay is temporary and only "remain[s] in effect until notice of entry of the order ruling on the motion." (*Ibid*.) HFPA's first anti-SLAPP motion to strike was not directed at the entirety of Asi's complaint and instead was directed only at claims related to HFPA's press releases. Any stay of discovery was only temporary and HFPA's actions to preserve and review potentially relevant evidence were still necessarily related to this litigation even though discovery was temporarily stayed.

Asi's argument is supported by a single citation to *Paul v. Friedman* (2002) 95 Cal.App.4th 853 (*Paul*). *Paul* is of no help to Asi. *Paul* concerned claims related to previous arbitration proceedings. As relevant to Asi's appeal, *Paul* merely noted that, to constitute protected conduct under section 425.16, subdivision (e)(2), the defendant must show "the suit arose from oral statements or writings 'made in connection with an issue under consideration or review' in the arbitration." (*Id*. at p. 865, quoting § 425.16, subd. (e)(2).)

18

Nothing in *Paul* supports Asi's claim that litigation activities fall beyond the ambit of our anti-SLAPP statute when they are undertaken while discovery is temporarily stayed. Cases do not stand for propositions not considered. (*People v. Harris* (1989) 47 Cal.3d 1047, 1071; *B.B. v. County of Los Angeles* (2020) 10 Cal.5th 1, 11.)

### 2. *Asi Has Not Established HFPA's Conduct was Illegal as a Matter of Law*

Asi argues HFPA's conduct in accessing and reviewing his emails was illegal as a matter of law and therefore cannot be protected activity under the exception stated by our Supreme Court in *Flatley v. Mauro* (2006) 39 Cal.4th 299 (*Flatley*). We conclude the *Flatley* exception is inapplicable here.

*Flatley* "is a very narrow exception. It applies only 'where either the defendant concedes the illegality of its conduct or the illegality is conclusively shown by the evidence.' [Citation.]" (*Finton Construction, Inc. v. Bidna & Keys, APLC* (2015) 238 Cal.App.4th 200, 210.) Since *Flatley*, courts have interpreted this exception to apply to conduct that is not merely illegal, but is criminal. (E.g., *Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153, 1169 ["[W]e hold that the rule from [*Flatley*], is limited to criminal conduct"]; *Mendoza v. ADP Screening & Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1654 [the *Flatley* court's "use of the phrase 'illegal' was intended to mean criminal, and not merely violative of a statute"].) The only purported criminal violation asserted by Asi is a violation of the Stored Communications Act.

Asi's reliance on *Flatley* is based on the false assertion that HFPA "did not provide any evidence" that it was authorized to preserve or access the emails on his HFPA account. Asi claims it is therefore undisputed that

19

HFPA committed "a federal criminal violation under the Stored Communications Act." Asi is incorrect. HFPA has repeatedly asserted that it was authorized to review Asi's emails. In briefing this issue in the trial court, HFPA argued that Asi's former counsel at Locke Lord authorized HFPA's access to and review of Asi's emails by producing a full copy of the emails on Asi's HFPA account subject only to the limitation that HFPA agree to not review the emails identified on Latham's metadata report.[5] HFPA also presented evidence of this authorization in the form of the declaration of its counsel and copies of counsels' correspondence on the subject. Asi did not object to this evidence below and does not claim on appeal that the trial court erred in considering this evidence in ruling on HFPA's motion.

Simply put, HFPA has not conceded the illegality of its conduct. Nor has Asi conclusively established any criminal conduct by HFPA as a matter of law. Asi has therefore failed to establish the *Flatley* exception applies.


B.    *Prong Two*

On appeal, HFPA argues Asi cannot establish a probability of prevailing on his email claims because they are barred by the litigation privilege under Civil Code section 47. We agree.

The litigation privilege extends to any communication: (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that has

---

[5] HFPA has also argued that it was authorized by Title 18 United States Code section 2701(c)(1), which provides the Stored Communications Act does not apply to conduct which is authorized "by the person or entity providing a wire or electronic communications service." (18 U.S.C. § 2701(c)(1).) HFPA contends that, as it was the entity which provided the email address to Asi, it did not need his authorization to review the emails on his account.

some connection or logical relation to the action. (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 (*Silberg*).) The privilege does not stop at protecting communications, and also extends to non-communicative acts that are "necessarily related to the allegedly wrongful communicative act." (*Rusheen, supra,* 37 Cal.4th at p. 1063.) Courts have recognized the privilege extends to the production of documents in discovery. (See *Foothill Federal Credit Union v. Superior Court* (2007) 155 Cal.App.4th 632, 635–636 [defendant's disclosure of documents in response to a valid discovery request was protected by the litigation privilege]; *Nelson v. Tucker Ellis, LLP* (2020) 48 Cal.App.5th 827, 846–847 [litigation privilege barred tort claims stemming from disclosure of attorney's work product in response to a valid subpoena].)

Asi's appellate briefing does not address the litigation privilege. Asi does not mention Civil Code section 47 or respond to the authority cited in the trial court's ruling or HFPA's appellate briefing. In the absence of any argument or authority on this point, we can only conclude that Asi has conceded that his email claims are barred by the litigation privilege. (*Westside Center Associates v. Safeway Stores 23, Inc.* (1996) 42 Cal.App.4th 507, 529 [a party "effectively concedes" an issue by failing to address it in briefing]; *Shaw, supra,* 95 Cal.App.5th at p. 754 [an argument is deemed forfeited in the absence of meaningful argument and citation to authority].)

"A plaintiff cannot establish a probability of prevailing if the litigation privilege precludes the defendant's liability on the claim." (*Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 888.) As Asi cannot carry his burden under prong two with respect to his email claims, we affirm the trial court's decision to grant HFPA's special

21

motion to strike. We therefore need not reach Asi's other arguments under prong two and decline to do so.[6]

IV. *Timeliness*

We reject Asi's contention that the trial court erred in finding that HFPA's motion to strike was timely. Section 425.16, subdivision (f), provides that an anti-SLAPP motion to strike "may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper." (§ 425.16, subd. (f).)

Asi contends that HFPA's 60-day time limit to bring an anti-SLAPP motion to strike began to run with the filing of his first amended complaint. In finding HFPA's motion timely, the trial court concluded that the parties' agreement to extend HFPA's time to respond to the first amended complaint also applied to the 60-day deadline imposed by statute. The appellate appendix prepared by Asi contains a register of actions from the trial court proceedings, which indicates a joint stipulation and order extending HFPA's time to respond to Asi's first amended complaint was filed on May 30, 2024. But this stipulation is not included in the appendix prepared by Asi. As a result, the only record we have of the parties' stipulation is the trial court's June 6, 2024, minute order noting that Asi agreed to extend HFPA's time to respond to the first amended complaint.

Asi cannot establish any error in the trial court's interpretation of the parties' stipulation as he has failed to preserve that stipulation in the record on appeal. "[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the

---

[6] HFPA's request for judicial notice is denied.

appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 (*Jameson*); *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574.)  Without the stipulation in the record, we have no way to review the propriety of the trial court's interpretation of that document.  "'"[I]f the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed."'"  (*Jameson, supra,* 5 Cal.5th at p. 609.)

The record shows the parties mutually agreed to extend HFPA's time to respond to the first amended complaint.  Other courts have recognized that such stipulations will serve to restart the 60-day clock under section 425.16, subdivision (f).  (See *South Sutter, LLC v. LJ Sutter Partners, L.P.* (2011) 193 Cal.App.4th 634, 654 [by stipulating to extend defendant's "time to respond to the complaint, the parties effectively agreed the 60-day time period to file an anti-SLAPP motion would start anew"].)  On the record before us, we find no error in the trial court's determination that HFPA's anti-SLAPP motion was timely under section 425.16, subdivision (f).

V.    *Judicial Estoppel*

Asi argues that the doctrine of judicial estoppel bars HFPA from arguing that its actions concerned an issue of "public interest" because it sought a protective order limiting the public disclosure of certain internal documents relating to its investigation into the allegations against Asi. Judicial estoppel "precludes a party from taking inconsistent positions in separate judicial proceedings." (*The Swahn Group, Inc. v. Segal* (2010) 183 Cal.App.4th 831, 841.)  We find nothing inherently inconsistent in HFPA's positions that: (1) there was public interest in how HFPA would respond to public allegations of sexual misconduct by one of its members, and (2) some of

HFPA's internal records regarding its investigation are confidential and should not be made available to the public. In protecting a party's right to speak on an issue of public interest, our anti-SLAPP statute does not require that a party forever forfeit the ability to speak privately on that issue.

## DISPOSITION

The trial court's order granting HFPA's anti-SLAPP motion to strike is affirmed. HFPA is awarded its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, P. J.

WE CONCUR:


TAMZARIAN, J.


COGLIATI, J.*


---

*Judge of the Santa Cruz Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.